IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. |
| | ) | |
| v. | ) | CIVIL COMPLAINT FOR |
| | ) | RECOVERY OF COSTS |
| JOE M. KRALL | ) | UNDER THE |
| | ) | OIL POLLUTION ACT OF 1990 |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

1. On February 26, 2018, a wind storm caused a portion of a pier containing a building where a fuel bladder and several containers were stored to collapse. The fuel bladder ruptured and spilled 3,000 gallons of Bunker C fuel oil into Port William Bay. A number of other barrels and containers with Bunker C fuel oil also fell into the water. The incident occurred at and near Shuyak Island, Alaska, an island in the northern part of the Kodiak Archipelago.

2. During the months of March, April and May, 2018, the United States Coast Guard (hereinafter "Coast Guard") responded to these discharges.

3. The United States, on behalf of the National Pollution Funds Center of the United States Coast Guard, brings this civil action under the Oil Pollution Act ("OPA"), 33 U.S.C. §§ 2701, et seq., to recover approximately $7,908,615.35 incurred by the Coast Guard in response to the discharges of oil from the facility.

## NATURE OF THIS ACTION

4. This is a civil action brought by the United States under Section 1002(b)(1) of OPA, 33 U.S.C. § 2702(b)(1).

5. The United States seeks a judgment against the Defendant in the amount of $7,713,615.35, and for any other appropriate relief.

## JURISDICTION AND VENUE

6. This court has jurisdiction over the subject matter of this action and over the parties pursuant to Section 1017(b) of OPA, 33 U.S.C. § 2717(b), and 28 U.S.C. §§ 1331 and 1345.

7. Authority to bring this action is vested in the United States Department of Justice by 28 U.S.C. §§ 516 and 519.

8. Venue is proper in the District of Alaska pursuant to Section 1017(b) of OPA, 33 U.S.C. § 2717(b), and 28 U.S.C. § 1391(b), because it is the judicial district in which the defendant is located and in which discharge and the resulting response actions occurred.

## DEFENDANT

9. Defendant Joe M. Krall is an individual who lives in Chugiak, Alaska.

## STATUTORY AND REGULATORY BACKGROUND

10. Section 1002(a) of OPA, 33 U.S.C. § 2702(a), provides that "each responsible party for . . . a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining

shorelines . . . is liable for the removal costs and damages specified in subsection (b) of this section [33 U.S.C. § 2702(b)] that result from such incident."

11. Section 1002(b)(1)(A) of OPA, 33 U.S.C. § 2702(b)(1)(A), states that "[t]he removal costs referred to in subsection (a) of this section are – all removal costs incurred by the United States, a State, or an Indian tribe under subsection (c), (d), (e), or (l) of [33 U.S.C. § 1321] under the Intervention on the High Seas Act (33 U.S.C. §1471 et seq.), or under State law."

12. Section 1001(7) of OPA, 33 U.S.C. § 2701(7), defines "discharge" to mean "any emission (other than natural seepage), intentional or unintentional" and to include "spilling, leaking, pumping, pouring, emitting, emptying, or dumping."

13. Section 1001(9) of OPA, 33 U.S.C. § 2701(9), defines "facility" to mean "any structure, group of structures, equipment, or device (other than a vessel) which is used for one or more of the following purposes: . . . storing, handling, [or] transferring . . . oil."

14. Section 1001(21) of OPA, 33 U.S.C. § 2701(21), defines "navigable waters" as "the waters of the United States, including the territorial sea."

15. Section 1001(23) of OPA, 33 U.S.C. § 2701(23), defines "oil" to mean "oil of any kind or in any form, including petroleum, fuel oil, sludge, oil refuse, and oil mixed with wastes other than dredged spoil."

16. Section 1001(24) of OPA, 33 U.S.C. § 2701(24), defines an "onshore facility" to mean "any facility (including, but not limited to, motor vehicles and rolling

stock) of any kind located in, on, or under, any land within the United States other than submerged land."

17. Section 1001(22) of OPA, 33 U.S.C. § 2701(22), defines "offshore facility" to mean "any facility of any kind located in, on, or under any of the navigable waters of the United States, and any facility of any kind which is subject to the jurisdiction of the United States and is located in, on, or under any other waters, other than a vessel or a public vessel."

18. Section 1001(30) of OPA, 33 U.S.C. § 2701(30), defines "remove" and "removal" to mean "containment and removal of oil or a hazardous substance from water and shorelines or the taking of other actions as may be necessary to minimize or mitigate damage to the public health or welfare, including, but not limited to, fish, shellfish, wildlife, and public and private property, shorelines, and beaches."

19. Section 1001(31) of OPA, 33 U.S.C. § 2701(31), defines "removal costs" to mean "the costs of removal that are incurred after a discharge of oil has occurred or, in any case in which there is a substantial threat of a discharge of oil, the costs to prevent, minimize, or mitigate oil pollution from such an incident."

20. Section 1002(b)(1) of OPA, 33 U.S.C. § 2702(b)(1), provides that the "removal costs" referred to in Section 1002(a) of OPA, 33 U.S.C. § 2702(a), include "all removal costs incurred by the United States . . . under [33 U.S.C. § 1321] subsection (c), (d), (e), or (l)."

21. Section 1001(32)(C) of OPA, 33 U.S.C. § 2701(32)(C), defines "responsible party" to include, "in the case of an onshore facility (other than a pipeline),

any person owning or operating the facility except a Federal agency, State municipality, commission, or political subdivision of a State or any interstate body, that as the owner transfers possession and right to use the property to another person by lease, assignment, or permit", and, "[i]n the case of an offshore facility (other than a pipeline or a deepwater port licensed under the Deepwater Port Act of 1974 (33 U.S.C. § 1501, et seq.)), the lessee or permittee of the area in which the facility is located or the holder of a right of use and easement granted under applicable State law or the Outer Continental Shelf Lands Act (43 U.S.C. §§ 1301 – 1356) for the area in which the facility is located (if the holder is a different person than the lessee or permittee), except a Federal agency, State, municipality, commission, or political subdivision of a State, or any interstate body, that as owners transfers possession and right to use the property to another person by lease, assignment, or permit."

## GENERAL ALLEGATIONS

22. During March, April and May 2018, the Coast Guard conducted removal actions in response to discharges and threats of discharges of oil into Port William Bay from fuel storage containers that became submerged or partially submerged in the water as a result of the collapsed pier.

23. The facility at issue is comprised of a group of structures and equipment that include, a fuel bladder owned by Defendant, several other oil-laden containers and barrels, and a large pier that connected the main buildings of a former fish canning plant to other structures out over the water, all of which is collectively referred to herein as the "Facility."

24. The Facility is located on two privately-owned parcels: the upland parcel (U.S. Survey 2932) and submerged tideland parcel (Alaska Tideland Survey No. 162). Presently, and on February 26, 2018, Bruce and Yvonne Cooper owned both the parcels.

25. In approximately 2011, Defendant entered into a lease agreement with Mr. and Mrs. Cooper as to the Facility. Following that agreement Defendant managed and controlled activities at the Facility up through and including the date of the spill including matters relating to the oil that was present and being stored there.

26. Defendant was aware that the ongoing environmental issues at the Facility, including several above-ground storage tanks that contained Bunker C fuel and that were located along a cliff overlooking the water.

27. On occasion, Defendant made use, or attempted to make use of oil stored at the Facility.

28. At all relevant times, Defendant managed and controlled the activities at the Facility.

29. In January 2013, someone shot a hole in one of the above ground storage tanks located on the Facility, causing it to rupture and spill much of its contents into the surrounding containment area.

30. To mitigate the pollution threat, Defendant transferred the remaining fuel from the ruptured tank into a fuel bladder that he owned. Defendant effectuated the transfer by connecting hoses from the ruptured tank to the fuel bladder, which he placed on the pier below. At all relevant times, Defendant stored the fuel bladder on the pier.

31. Defendant also owned or operated other barrels and equipment containing oil. Defendant stored all of these items on the pier at the Facility.

32. On or about February 26, 2018, a severe windstorm swept through the area, at which time the pier collapsed, spilling its contents into the surrounding waters.

33. The Coast Guard, by and through the National Pollution Funds Center, incurred $7,908,615.35 in removal costs from responding to discharges and threats of discharges from the Facility, the actions of which include but are not limited to: leading the Unified Command, comprised of state and federal stakeholders, such as the National Oceanic Atmospheric Agency, the U.S. Fish and Wildlife, the Alaska Department of Environmental Conservation, and the Tribal and Gogebic County Police; conducting investigations into the nature and extent of the oil dispersion; assessing the presence of additional containers located on the pier and over the water that posed a substantial threat of a discharge of additional oil; developing and approving the response plan; retaining necessary pollution removal contractors; monitoring approximately 3400 feet of boom for passive fuel collection; and overseeing the eventual collection and disposal of approximately 446,580 pounds of oil-laden debris and 9,000 pounds of Bunker C fuel oil.

ALLEGATIONS SUPPORTING CLAIMS FOR RELIEF

34. The Facility is an "onshore facility" within the meaning of Section 1001(24) of OPA, 33 U.S.C. § 2701(24), because it was located in, on, or under, any land within the United States. Onshore facilities also include "appurtenances", such as docks, piping, wharves and piers, that rest on submerged lands but are connected directly or indirectly to a land-based terminal.

35. Alternatively, the Facility is an "offshore facility" within the meaning of Section 1001(22) of OPA, 33 U.S.C. § 2701(22), because it was located over the navigable waters of the United States and was not a vessel or a public vessel.

## FIRST CLAIM FOR RELIEF

## LIABILITY FOR REMOVAL COSTS INCURRED BY THE COAST GUARD IN RESPONSE TO DISCHARGES AND THREATENED DISCHARGES OF OIL FROM A FACILITY INTO NAVIGABLE WATERS

36. Paragraphs 1-35 are hereby incorporated by reference.

37. The structures and equipment identified in Paragraph 23 above, is a Facility within the meaning of Section 1001(9) of OPA, 33 U.S.C. 2701(9).

38. At the time of the discharge from the Facility Defendant was a "responsible party" within the meaning of Section 1001(32)(B) or (C) of OPA, 33 U.S.C. § 2701(32)(B) or (C), because at the time of the discharge of oil from the Facility he was the owner or operator of the onshore facility, or in the alternative, due to his agreement with Mr. and Mrs. Cooper, Defendant was a holder of a right of use and easement under applicable State law for the area in which the off-shore facility was located.

39. Because Defendant is a responsible party under Section 1001(32)(B) or (C) of OPA, 33 U.S.C. 2701(32)(B) or (C), he is liable to the United States for all costs and damages incurred by the National Pollution Funds Center of the United States Coast Guard in response to discharges and threatened discharges of oil from the Facilities.

## PRAYER FOR RELIEF

WHEREFORE the United States, on behalf of the National Pollution Funds Center

of the United States Coast Guard, respectfully requests that this Court grant it the following relief:

1.   Enter a judgment holding Defendant Krall liable to the United States in the amount of $7,713,615.35.

2.   Enter a declaratory judgment against Defendant Krall for removal costs binding on any subsequent action or actions to recover further removal costs or damages, plus interest, costs, disbursements, and attorneys' fees.

3.   Grant the Untied States such other relief as may be appropriate.

Respectfully submitted,

JEAN E. WILLAMS
Acting Assistant Attorney General
Environment and Natural Resources Division

/s/ David L. Dain
DAVID L. DAIN, COLO. BAR NO. 12224
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
999 18th Street, South Terrace, Suite 370
Denver, CO 80202
Telephone: (303) 844-7371
Facsimile: (303) 844-1350
Email: david.dain@usdoj.gov

BRYAN WILSON
Acting United States Attorney
District of Alaska

STEVEN SKROCKI
Chief of Civil Litigation

222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-3390

Page - 9 COMPLAINT *(U.S. v. Joe M. Krall)*
Case 3:21-cv-00094-JMK   Document 1   Filed 04/14/21   Page 9 of 10

OF COUNSEL:

HELKEI HEMMINGER
LEGAL COUNSEL
NATIONAL POLLUTION FUNDS CENTER
UNITED STATES COAST GUARD
2703 MARTIN LUTHER KING, JR. AVE. SE
WASHINGTON, D.C. 20593-7605